UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS M. BUCKOVETZ, an individual,<br><br>  Plaintiff,<br><br>v.<br><br>THE DEPARTMENT OF THE NAVY,<br><br>  Defendant. | Case No.:  21-cv-640-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

    The matters before the Court are Defendant Department of the Navy's Motion for Summary Judgment (ECF No. 30) and Plaintiff Dennis M. Buckovetz's renewed request for discovery (*see* ECF No. 38).

**I.    PROCEDURAL BACKGROUND**

    On April 13, 2021, Plaintiff initiated this action by filing a Complaint. (ECF No. 1.) The Complaint alleges that Plaintiff requested Defendant produce emails concerning an unlawful scheme by officers at the Marine Corps Recruit Depot in San Diego ("MCRD") to sell Marine Corps memorabilia, including commemorative coins, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See id*. ¶ 14. The Complaint alleges that Defendant violated FOIA by "deliberately conceal[ing] or destroy[ing]" responsive emails "upon receipt of [the] FOIA request and before production." *Id*. ¶ 2. The Complaint

requests the following relief: (1) a declaration that Defendant violated FOIA; (2) an order requiring Defendant to produce responsive records; (3) an injunction against Defendant's continued withholding of any responsive records; (4) written findings concerning whether agency personnel acted arbitrarily or capriciously; (5) an award of Plaintiff's attorneys' fees and litigation costs; and (6) other such relief as the Court deems just and proper, including sanctions.

On May 9, 2022, Defendant filed the Motion for Summary Judgment. (ECF No. 30.) Defendant requested summary judgment on the basis that affidavits submitted in support of the motion demonstrated that Defendant conducted a search reasonably calculated to uncover all documents responsive to Plaintiff's FOIA request.

On May 31, 2022, Plaintiff filed a Motion for Discovery. (ECF No. 31.) Plaintiff requested discovery in lieu of summary judgment on the basis that the affidavits submitted by Defendant evidenced bad faith and did not adequately explain the search process.

On September 29, 2022, the Court issued an Order addressing both pending motions. (ECF No. 34.) In the Order, the Court first rejected the assertion that the limited participation of an individual named in the FOIA request in responding to the request supported a finding of bad faith. However, the Court further held that the affidavits submitted by Defendant were not sufficiently detailed in their description of the search conducted by Defendant because they did not identify any of the "several reasons" for MCRD's failure to produce certain responsive emails. *Id.* at 9. The Court determined that identification of these reasons was necessary in this case because evidence supporting Plaintiff's allegations—that responsive emails were not produced because they were intentionally concealed or destroyed in response to Plaintiff's FOIA request—would preclude summary judgment in favor of Defendant. Accordingly, the Court required Defendant to submit more detailed affidavits addressing this deficiency.[1] The Court further

---

[1] The Court denied Plaintiff's request for further discovery without prejudice.

permitted each party to file supplemental briefing in response to any additional affidavits submitted by Defendant.

On November 15, 2022, Defendant filed a Supplemental Brief and two additional affidavits in accordance with the Court's September 29, 2022, Order. (ECF No. 37.) On December 7, 2022, Plaintiff filed a Supplemental Response. Plaintiff's Supplemental Response renews Plaintiff's request for discovery in lieu of summary judgment. On February 10, 2023, the Court heard oral argument on the Motion for Summary Judgment.

## II. FACTS

On December 18, 2014, Plaintiff "was carbon-copied on an email chain between Major General James W. Bierman and others" regarding the sale of commemorative coins that "caused [Plaintiff] concern because [Plaintiff] understood that the sales … diverted revenue from Marine Corps Community Services ('MCCS')." (Buckovetz Decl., ECF No. 31-2 ¶¶ 2-3.) On January 23, 2015, Plaintiff submitted FOIA Request DON-USMC-2015-002772 to MCRD, requesting:

> all email messages dated on or after 1 May 2014 that have any of the following email addresses Mart.Tull@usmc.mil, Jim.Gruny@usmc.mil, Michael.Lee@usmc.mil, James.Bierman@usmc.mil, Thomas.W.Spencer@sumc-mccs.org, and John.Ming@usmc.mil on the "From:", "To:", "Cc:", or "Bcc:" lines AND contain the words "coin" or "coins" on the subject line or within the body of the message.

(Ex. 1 to Camacho Decl., ECF No. 30-1 at 10.) MCRD referred a portion of the FOIA request "pertaining to emails from [MCCS]" to Marine Corps Headquarters for processing because the MCCS email address of Thomas Spencer was "not maintained by MCRD." (Camacho Decl., ECF No. 30-1 ¶ 4.)

Michael Lee, MCRD's Chief of Staff and FOIA Initial Denial Authority, "instructed Cinthia Camacho, the FOIA Specialist for MCRD, to make sure [Plaintiff] received everything [Plaintiff] was requesting." (Lee Decl., ECF No. 30-2 ¶ 5.) On February 4, 2015, Captain Lisa Woo, the Deputy Staff Judge Advocate for MCRD, sent an email to the MCRD Information Technology ("IT") department instructing the department to provide

Camacho with the requested emails and "recommend[ing] that individuals who are named in the FOIA request [ ] not be involved in processing the FOIA request." (Ex. 3 to Camacho Decl., ECF No. 30-1 at 15.) Camacho "worked with the Staff Judge Advocate and the IT department to search for responsive emails" in the MCRD email accounts of the individuals named in the FOIA request. (ECF No. 30-1 ¶ 5.) On February 20, 2015, Lee sent a letter to Plaintiff "acknowledging the receipt" of the FOIA request and notifying Plaintiff that a portion of the request had been referred to Marine Corps Headquarters. (ECF No. 30-2 ¶ 4.)

Camacho "received the responsive emails directly from the IT department" and "personally applied redactions based on FOIA's exemptions." (ECF No. 30-1 ¶ 6.) Camacho "did not remove or delete any emails from the production." *Id.* Lee "reviewed the production and relied upon the work of [Camacho and Woo] in determining the appropriateness of the proposed redactions." (ECF No. 30-2 ¶ 6.) Lee "did not remove any emails" or "at any point in time, intentionally delete any emails … for the purpose of keeping those emails from being produced." *Id.* ¶¶ 5-6. On March 5, 2015, Lee sent Plaintiff a letter responding to the FOIA request and providing 384 responsive emails, including several emails from January of 2015 containing Bierman's email address and discussing the ongoing sale of coins. (*See* Exhibit A to McConnell Decl., ECF No. 37-2 at 3-14.). The production "did not contain" the email chain on which Plaintiff had been copied on December 18, 2014. (ECF No. 31-2 ¶ 5.)

Following the March 5, 2015 production, Plaintiff "raised concerns about whether all emails were searched and [ ] questioned the use of Exemption (b)(7)." (ECF No. 30-1 ¶ 8.) In response to these concerns, an MCRD IT employee conducted a further search of emails saved as .pst files and Camacho "corrected MCRD's use of the FOIA Exemption (b)(7)." *Id.* ¶ 9. Lee "was not involved in the processing and production of materials from this additional search." (ECF No. 30-2 ¶ 7.) On May 22, 2015, MCRD sent Plaintiff a second response to his FOIA request that did not contain the December 18, 2014, email chain on which Plaintiff had been copied.

On November 23, 2015, Marine Corps Headquarters responded to the portion of Plaintiff's FOIA request that had been referred from MCRD. In its production, Marine Corps Headquarters produced five additional responsive emails that included both Thomas Spencer's MCCS email address and MCRD email addresses named in the FOIA request, but that had not been produced by MCRD: the chain of four emails on which Plaintiff had been copied on December 18, 2014, and an additional email dated October 29, 2014, (collectively, the "five missing emails").[2]

On September 3, 2018, Plaintiff "submitted another FOIA request that used the same language as Request DON-USMC-2015-002772." (ECF No. 30-1 ¶ 11.) "MCRD administratively closed [Plaintiff's] 2018 FOIA request as a duplicate of the 2015 request." *Id.* ¶ 13. "The Marine Corps and MCRD have received several other FOIA requests that either duplicate or overlap with [Plaintiff's] 2015 and 2018 FOIA requests." *Id.* ¶ 16. In response to an October 19, 2018, FOIA request from an individual with the same mailing address as Plaintiff, "MCRD identified 106 pages of records in formats not previously produced to [Plaintiff]." *Id.* ¶ 17. On June 14, 2019, MCRD produced the 106 pages of records to Plaintiff. Plaintiff submitted additional FOIA requests on September 25, 2019, November 4, 2019, and November 11, 2019, that were closed as duplicative.

During the course of litigation, Camacho "learned that [Plaintiff] believed he received five email messages as part of Marine Corps Headquarters production that should

---

[2] The five emails discuss the sale of commemorative coins, the quantity sold, and plans to reorder coins to sell in the future. (*See* Ex. C to Complaint, ECF No. 1 at 27 (email from Jim Gruny "provid[ing] a status on where we stand on liquidating our coin and pin inventory" and describing sales to families of marines, Marine Corps Community Services, and the "museum foundation"); *Id.* at 26 (email from Bierman titled "Coins" that stated: "We sold all one hundred by 0815. I don't want to ever run out… Ever… Again!!!" (ellipses in original)); *Id.* at 25 (email in response stating that the entire inventory of 183 company coins had been sold due to an underestimate as to "the level of interest," and indicate an intent to reorder).) Plaintiffs allege that the sale of commemorative coins is supposed to fund Marine Corps Community Services programs, but that Bierman and others diverted proceeds to fund the Marine Corps Birthday Ball and other events without authorization. (*See generally* Complaint, ECF No. 1.) In a declaration, Spencer states that the five missing emails related to these unauthorized activities. (*See* Ex. E to Buckovitz Decl., ECF No. 31-2 at 20.)

have been, but were not, included in MCRD's production."[3] *Id.* ¶ 18. Camacho "spent many hours reviewing [MCRD's] search efforts, reviewing [MCRD's] productions, and conferring with IT staff at headquarters about why this would have occurred." *Id.* IT staff performed additional "targeted searches focused solely on the days the 'missing' emails were sent." *Id.* "IT staff at headquarters identified several reasons the emails might have been missing from MCRD's search results, but [ ] were unable to definitively determine what the cause was in this instance" and found no additional responsive documents. *Id.*

The reasons identified by IT staff for why the MCRD's initial search failed to find the five missing emails are as follows:

a. The end user deleted the data.
b. The end user moved the data to a local PST file.
c. The data exists outside of the scope of the request, for example the data had been moved to a PST file and the request did not ask for those files to be acquired, or the data exists outside the timeframe requested.
d. The data is not able to be located because the request specifies an exact set of search terms. For example, if the request asks for a search of the subject line, but the term is within the body of a message.

(Rosenbaum Decl., ECF No. 37-1 ¶ 5.) "There is no way to determine, from a systems standpoint, which of the scenarios listed above" was the cause of MCRD's failure to find the five missing emails produced by Marine Corps Headquarters. *Id.* ¶ 8. "During the period from 2014 to 2015," MCRD email users "were required to routinely delete or archive email messages" because of "very limited email storage capacity." *Id.* ¶ 6.

III. **CONTENTIONS**

Defendant contends that the affidavits it has submitted demonstrate that it "performed searches reasonably calculated to recover all relevant documents" responsive to Plaintiff's FOIA requests. (ECF No. 37 at 1.) Defendant contends that the affidavits demonstrate that there are several reasons why the five missing emails produced by Marine

---

[3] MCRD later produced to Plaintiff the October 29, 2014, email in response to a separate FOIA request. (*See* ECF No. 31-2 ¶ 8.)

Corps Headquarters were not also produced by MCRD. Defendants contend that the possibility that a user deleted the emails does not raise an inference of bad faith because it is "far more plausible" that users "deleted the 'missing' email messages from their mailbox in the ordinary course, prior to Plaintiff's… FOIA request" than it is that they intentionally deleted emails in response to the FOIA request. *Id.* at 4-5. Defendants contend that "[t]he Court may also infer the absence of any intentional deletions… based upon the emails that *were* produced by MCRD." *Id.* at 5. Defendant contends that there is no remedy the Court can grant because Plaintiff has received all responsive documents.

Plaintiff contends that "careful scrutiny demonstrates that deletion of the emails… is the *only* plausible reason why MCRD failed to produce" the five missing emails. (ECF No. 38 at 2.) Plaintiff contends that additional discovery is necessary to determine whether this deletion was intentional. Plaintiff contends that MCRD's production of other emails does not demonstrate a lack of intent because the December 18, 2014, emails were uniquely inculpatory. Plaintiff requests additional discovery in the form of a deposition of James W. Bierman and the production of communications involving Bierman relating to the FOIA process and personnel.

## IV.   DISCUSSION

FOIA cases are usually decided at the summary judgment stage. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). To prevail on summary judgment in a FOIA case, "[t]he agency must: 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). To sustain its burden of "demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (quoting *Weisberg*, 745 F.2d at 1485). The affidavits describing an agency's search must be "relatively detailed in their description of the files searched and the search procedures." *Zemansky*, 767 F.2d at 573; *see also Lion Raisons, Inc. v. U.S. Dep't of Agric.*, 636 F. Supp. 2d 1081, 1104 (E.D. Cal. 2009) ("In a FOIA case, sufficient declarations describe 'what

records were searched, by whom, and through what process.'") (quoting *Lawyers' Comm. for Civ. Rts. v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008)).

"While ordinarily the discovery process grants each party access to evidence, in FOIA … cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents." *Lane*, 523 F.3d at 1134. Accordingly, when an agency's affidavits are adequate, a district court may forgo discovery and grant summary judgment on the basis of the agency affidavits alone. *See id.; see also Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994). However, courts may permit discovery if an agency does not adequately explain its search process or if there is evidence that an agency submitted a declaration in bad faith. *See Withey v. Fed. Bureau of Investigations*, No. C18-1635-JCC, 2020 WL 885974, at *2 (W.D. Wash. Feb. 24, 2020); *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, No. 1:08-CV-00358-OWW-SMS, 2009 WL 160283, at *2 (E.D. Cal. Jan. 21, 2009); *Van Strum v. U.S. E.P.A.*, 680 F. Supp. 349, 352 (D. Or. 1987).

As an initial matter, the evidence presented by the parties does not demonstrate any deficiency inherent in the searches coordinated by Camacho and described in detail in the affidavits submitted by Defendant. In the face of this evidence, MCRD's failure to locate the five missing emails does not preclude a determination that Defendant's search was adequate, particularly given that the emails were later produced to Plaintiff by Marine Corps Headquarters. *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 988 (9th Cir. 2009) (stating that "[a] search is not rendered inadequate based on "the failure to produce or identify a few isolated documents"); *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) ("[T]he production of all nonexempt material, 'however belatedly,' moots FOIA claims." (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982))).

However, the concealment or destruction of records in response to a FOIA request renders a subsequent search for such records inadequate, even if that search appears reasonable when considered in isolation. *See DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) ("The general rule is that an agency may not avoid a FOIA request by intentionally ridding itself of a requested document"); *Chambers v. U.S. Dep't of Interior*,

568 F.3d 998, 1003-04 (D.C. Cir. 2009) ("[A] reasonable jury could find that Interior intentionally destroyed the document—rendering the subsequent search ineffective—and there is therefore a genuine issue of material fact whether the search was adequate"); *cf. Kissinger v. Rep. Comm. for Freedom of the Press*, 445 U.S. 136, 155 n.9 (1980) ("There is no question that a 'withholding' must here be gauged by the time at which the request is made since there is no FOIA obligation to retain records prior to that request."); *Lahr*, 569 F.3d at 988 n.24 ("The government, of course, must produce responsive documents *actually uncovered*."). Plaintiff's position is that the discrepancy in the productions of MCRD and Marine Corps Headquarters regarding the five missing emails evidences a broader scheme by MCRD employees to "erase[] or somehow conceal[]" documents in response to Plaintiff's FOIA request, including unknown "additional responsive emails that were located only on the [MCRD] server." (ECF No. 1 ¶ 48.)

The Declaration of Karl Rosenbaum identifies the following reasons why MCRD's initial search failed to find the five missing emails:

    a. The end user deleted the data.
    b. The end user moved the data to a local PST file.
    c. The data exists outside of the scope of the request, for example the data had been moved to a PST file and the request did not ask for those files to be acquired, or the data exists outside the timeframe requested.
    d. The data is not able to be located because the request specifies an exact set of search terms. For example, if the request asks for a search of the subject line, but the term is within the body of a message.

(Rosenbaum Decl., ECF No. 37-1 ¶ 5.) However, a search of PST files was later conducted, (*see* Camacho Decl., ECF No. 30-1 ¶ 9), and a review of the five missing emails demonstrates that those emails plainly fall within the scope of the request and the specified search terms. Accordingly, MCRD's failure to produce the five missing emails is most plausibly explained by the possibility that an end user deleted the data.

While the Rosenbaum Declaration supports Plaintiff's position that the five missing emails were deleted by users, it does not demonstrate that any deletion of emails occurred in response to Plaintiff's FOIA requests. The Rosenbaum Declaration is instead entirely

consistent with the competing possibility that the five missing emails were deleted prior to the 2015 FOIA request, either to free up "very limited email storage capacity," (ECF No. 37-1 ¶ 6), or for other reasons. *See Kissinger*, 445 U.S. at 155 n.9 (1980) ("[T]here is no FOIA obligation to retain records prior to [a FOIA] request."). MCRD's production of 384 emails, including several emails from January of 2015 that were sent to or from Bierman's email address and discuss the sale of coins, further undermines Plaintiff's theory that individuals at MCRD deleted responsive emails to shield them from Plaintiff's FOIA request. (*See* Exhibit A to McConnell Decl., ECF No. 37-2 at 3-14.) Plaintiff does not present any contrary evidence that the possible deletion of the five missing emails was motivated by an intent to evade an existing FOIA request, or that other unknown responsive emails existed and were deleted for the same reason.[4] In the absence of such evidence, Plaintiff is unable to rebut the affidavits submitted by Defendant, which expressly deny that any emails were "intentionally delete[d]… for the purpose of keeping those emails from being produced." (Lee Decl., ECF No. 30-2 ¶¶ 5-6); *see Smart-Tek Servs., Inc. v. U.S. Internal Rev. Serv.*, 829 F. App'x 224, 225 (9th Cir. 2020) ("Agency affidavits … cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991))).

Further discovery in this action is inappropriate because Defendant has adequately explained its search process and the affidavits presented by Defendant do not evidence bad faith. Plaintiff's allegations that there exist unknown responsive emails that were

---

[4] In a declaration, Thomas Spencer stated that he has a "belief" that there exist other email conversations concerning coins on which he was not included. (*See* Ex. E to Buckovitz Decl., ECF No. 31-2 at 20.) As an initial matter, Spencer's statement fails to support Plaintiff's position that unknown emails were not produced because Spencer's belief is consistent with MCRD's production of 384 other responsive emails. More fundamentally, Spencer's belief is not cognizable evidence because Spencer offers no facts to support his belief or to otherwise demonstrate personal knowledge. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (stating that a "belief" is not cognizable evidence at summary judgment in the absence of proof that the declarant had personal knowledge of the matter).

intentionally deleted in response to his FOIA requests and have not been produced does not justify additional discovery because these allegations are not adequately supported by evidence in the record. *See Carney*, 19 F.3d at 813 (stating that allegations that additional concealed documents exist and were not produced are insufficient to justify discovery in the absence of factual support). The Court concludes that Defendant has "'demonstrate[d] that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485). Summary judgment is granted in favor of Defendant.

## V. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's renewed request for discovery (*see* ECF No. 38) is denied.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 30) is granted. The Clerk of the Court shall enter Judgment in favor of Defendant and against Plaintiff, and shall close the case.

Dated: March 8, 2023

Hon. William Q. Hayes
United States District Court